Submitted on record and briefs January 19, affirmed June 27, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROBERT COOPER TOTH,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR040608; A127429

162 P3d 317

Andrew S. Chilton and Chilton, Ebbett & Rohr, LLC, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant was convicted of two counts of delivery of a controlled substance (DCS), *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005), and two counts of possession of a controlled substance (PCS), *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). The trial court imposed departure sentences on the two DCS convictions, based on the jury's findings that defendant was persistently involved in similar offenses. Defendant appeals, challenging only the sentence. Specifically, he challenges the legal sufficiency of one of the jury instructions pertaining to the finding of persistent involvement. He concedes that he did not challenge the instruction at trial, but argues that we should review the matter as plain error. We conclude that the instruction was not plainly erroneous and therefore affirm.

The relevant facts are not in dispute. The state charged defendant with seven drug offenses involving the possession and sale of methamphetamine. The case was tried to a jury in two phases: a trial phase and a sentencing phase. *See generally* Or Laws 2005, ch 463, §§ 1-7, 20-23, *compiled as a note after* ORS 136.001 (providing for separate jury trial on "enhancement facts" that may result in increase in sentence).

In the first phase, the jury heard evidence and arguments related to whether defendant committed the offenses. As we have noted, the jury found him guilty of two counts of DCS and two counts of PCS.

In the second phase, the jury heard evidence and arguments regarding the existence of sentencing enhancement facts that would permit the trial court to impose an upward departure sentence from the sentence that is otherwise presumed under the sentencing guidelines. The state alleged that defendant's history of methamphetamine offenses demonstrated that he was "persistently involved in similar offenses," which would justify an upward departure sentence on the convictions for DCS. *See* OAR 213-008-0002(1)(b)(D) (listing "persistent involvement in similar offenses" as departure factor). Defendant stipulated to having five prior convictions for possession of methamphetamine

and a conviction for driving under the influence of intoxicants. Defendant, however, argued that the existence of those prior convictions demonstrated only that he had long struggled with methamphetamine addiction, not that the jury would be warranted in finding persistent involvement. The state argued that defendant's continuing engagement in such illegal activity involving methamphetamine demonstrated a "continuing intent to continue in what he is doing."

At the conclusion of the evidence in the sentencing phase, the court instructed the jury as follows:

"THE COURT: It is now your duty to determine the answer to two further question[s]. As to [the first DCS count], do the other offenses presented to you of which the Defendant has been found guilty evidence of persistent involvement in similar offenses that are unrelated to the offenses set forth in [the first DCS count]?

"As to [the second DCS count] do the other offenses presented to you which the Defendant has been found guilty evidence of persistent involvement in similar offenses that are unrelated to the offense set forth in [the second DCS count]?"

Defendant did not object to that instruction.

The jury found that defendant had been persistently involved in other similar offenses, and the trial court imposed an upward durational departure sentence of 20 months' imprisonment on the first DCS conviction and an upward dispositional departure sentence of 12 months' imprisonment on the second DCS conviction.

On appeal, defendant argues that the trial court erred in failing to instruct the jury that, to make a finding of "persistent involvement," the jury was required to find not only that he had repeatedly been involved in similar offenses, but also that his criminal history exhibits both a pattern of increasingly serious conduct and an underlying malevolent quality that explains his inclination to engage repeatedly in that conduct. He concedes that he advanced no such objection to the trial court, but argues that the instruction nevertheless was plainly erroneous.

The state's response is threefold. First, the state argues that, under ORCP 59 H, defendant's contention is not reviewable. Second, the state argues that, even if ORCP 59 H does not preclude review, defendant's assignment remains unreviewable because the jury instruction was not plainly erroneous. Third, the state argues that, even if defendant's assignment of error is reviewable, and even if the instruction was erroneous, any error was harmless because there is no doubt that the jury would have reached the same conclusion had the trial court delivered what defendant contends are the proper instructions.

■ We begin with the state's contention that ORCP 59 H renders defendant's assignment of error unreviewable. ORCP 59 H applies to criminal trials. ORS 136.330(2). The rule provides, in part, that

> "[a] party may not obtain review on appeal of an asserted error by a trial court * * * *in giving or refusing to give an instruction to a jury* unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury."

(Emphasis added.)

On its face, the rule appears to apply when a party asserts for the first time on appeal that a trial court erred in "giving or refusing to give" an instruction. It thus would bar review of an unpreserved objection regarding an instruction in two possible situations—first, when the court delivered an instruction that a party later contends was erroneous; and second, when the court refused to deliver an instruction that a party requested. By its terms, the rule does not appear to apply when the asserted error is that the trial court failed to deliver an instruction that was *not* requested but that a party later contends was required by law.

Consistent with what the bare wording of the rule suggests, our cases have held that ORCP 59 H does not preclude review of a trial court's failure to deliver an instruction that was not requested but that the law nevertheless requires. In that regard, our opinion in *State v. Pervish*, 202 Or App 442, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006), is particularly instructive. In that case, the trial court failed

to deliver a jury concurrence instruction. *See generally State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993). On appeal, the defendant argued that the trial court erred in failing to deliver such an instruction. The state responded that the defendant's contention was not reviewable under ORCP 59 H, because the defendant had failed to ask for the instruction in the first place. We rejected the argument, explaining,

> "There was nothing wrong with the uniform instruction that the court gave, as far as it went. In fact, defendant does not contend that the instruction was erroneous. Rather he complains that the trial court erred in failing to further instruct the jury that it must reach the requisite degree of concurrence regarding a particular factual incident and victim in order to convict him on any particular count. That notion is not captured in the uniform instruction but, rather, is a further refinement of it. In other words, defendant had no reason to object to the instruction that the court gave; instead his argument on appeal is that the instruction * * * was incomplete. Accordingly, ORCP 59 H, which requires exceptions to instructions that the trial court actually gave, does not preclude our review of defendant's first assignment of error."

*Pervish*, 202 Or App at 451.

In this case, defendant's contention is materially indistinguishable from the defendant's contention in *Pervish*. He argues in this case that, although the instructions that the trial court delivered to the jury were correct as far as they went, they were incomplete in that they failed to refine the meaning of "persistent involvement" by explaining that the jury was required to make subsidiary findings. As in *Pervish*, we are not precluded from reviewing that contention by ORCP 59 H.

■■ That does not mean that defendant's contention is reviewable, however. Defendant's unpreserved contention that the trial court erred in failing to deliver additional jury instructions is not reviewable unless: (1) the asserted error is one of law; (2) the legal point is obvious, that is, not reasonably in dispute; and (3) we need not go outside the record or choose between competing inferences to find the asserted error. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If

the asserted error satisfies those criteria, this court may then exercise its discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). In all events, this court will not review an unpreserved claim of error unless there is no doubt that the trial court's actions were erroneous. *State v. Ramirez*, 205 Or App 113, 133 P3d 343, *adh'd to on recons*, 207 Or App 1, 139 P3d 981 (2006), *rev allowed*, 342 Or 256 (2007).

■ In this case, the asserted error is one of law, and the fact that the trial court did not deliver the instructions that defendant contends the law requires is apparent from the record. The question that remains is whether any error in failing to deliver the instruction is obvious and not reasonably in dispute. Answering that question requires an analysis of what the law does or does not require by way of instructions in the sentencing phase.

Under the sentencing guidelines, the presumptive length of a defendant's sentence is a function of the severity of the crime and the extent of the defendant's criminal history. *See* OAR 213-004-0001 (describing sentencing guidelines grid); OAR 213-003-0001(16) (defining "presumptive sentence" as "the sentence provided in a grid block * * * by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history"). The court may impose an upward durational or dispositional departure from the presumptive sentence only if the state has proven the existence of one or more aggravating factors and the court, in considering those factors, determines that substantial and compelling reasons for a departure exist. OAR 213-008-0001. One such aggravating factor is a finding of defendant's "persistent involvement in similar offenses." OAR 213-008-0002(1)(b)(D).

In *State v. Bray*, 342 Or 711, 160 P3d 983 (2007), the Supreme Court explained that a finding of "persistent involvement in similar offenses" requires more than just a record of prior convictions:

> "In determining whether the record establishes '[p]ersistent involvement in similar offenses,' a sentencing court must do more than find that a defendant has two or more prior convictions for similar offenses. The trier of fact

must infer from the number and frequency of those prior convictions whether the defendant's involvement in those offenses is 'persistent'; that is, the trier of fact must determine whether the defendant's involvement in similar offenses is sufficiently continuous or recurring to say that it is 'persistent.' "

*Id.* at 724.

Our own cases similarly have recognized that a finding of "persistent involvement in similar offenses" necessarily depends on the existence of facts beyond a defendant's criminal history. As we explained in *State v. Kennedy*, 113 Or App 134, 139, 831 P2d 712 (1992), that is so because the bare facts of a defendant's criminal history are already incorporated into the calculation of defendant's criminal history score and thus are already reflected in the defendant's *presumptive* sentence as it is calculated under the guidelines:

"The [persistent involvement] factor is intended to capture, for sentencing purposes, a separate malevolent quality in the offender represented by the repetitive nature or pattern of the offender's criminal behavior over and above simply counting the number of offenses in an offender's criminal history."

*Id.* at 137-38. *See also State v. Perez*, 196 Or App 364, 372-73, 102 P3d 705 (2004), *rev'd on other grounds*, 340 Or 310, 131 P3d 168 (2006) (same).

We have further held that, because a record of prior convictions—by itself—is insufficient to establish "persistent involvement in similar offenses," it follows that a defendant's admission of his or her prior convictions is not sufficient to constitute an admission of "persistent involvement" for purposes of avoiding the requirement that sentencing enhancement facts be found by a jury unless admitted by the defendant, as required by *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). In *State v. Steele*, 205 Or App 469, 134 P3d 1054 (2006), the defendant advanced the unpreserved contention that the trial court committed plain error under *Blakely* and *Apprendi* when it imposed a departure sentence on the basis of its own findings that, among other things, the defendant had been

engaged in "persistent involvement in similar offenses." The state argued that the defendant's rights under those cases had not been violated when he admitted to his criminal history. We rejected the state's contention, explaining that an admission of criminal history is not sufficient to establish all that a finding of "persistent involvement" entails. *Steele*, 205 Or App at 471-72.

It is thus clear from the foregoing case law that a finding of "persistent involvement" entails, as a matter of law, more than a finding of prior criminal convictions and, conversely, that the mere existence of criminal history is insufficient to support a "persistent involvement" finding. It does not necessarily follow from that, however, that *a jury must be instructed* that "persistent involvement" entails the subsidiary considerations that the case law has developed. That is a different question.

A trial court is required to instruct jurors on "all matters of law necessary for their information in giving their verdict." ORCP 59 B. As a rule, a trial court should attempt to "reduce the relevant law to terms readily grasped by the jury," *Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 772 P2d 929 (1989), and to use language that is "clear" and "understandable." In that regard, the Supreme Court has specifically cautioned against using the exact words from appellate court opinions in instructing a jury where the legal language of the opinion might confuse the jury. *Id.* The failure to deliver an instruction is not error if the instructions that the court has given "adequately cover[ ] the subject of the requested instruction." *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993).

In this case, the trial court instructed the jury that it must decide whether defendant has engaged in "persistent involvement in similar offenses" to the delivery of controlled substances. Defendant does not argue that the court erred in giving that instruction; rather, he argues that the court should have explained what it means to engage in "persistent involvement," specifically that the existence of prior convictions does not suffice and that those prior convictions must be of a sufficient number or frequency as to support a finding of "persistence."

It is at least reasonably disputable, however, whether such elaboration in a jury instruction is required as a matter of law. It certainly could be asserted, for example, that, by instructing the jury that it must determine whether defendant engaged in "persistent involvement," the court told the jury everything that the law requires. The word "persistent," after all, is commonly understood to connote—without further elaboration—"continuing in a course of action without regard to opposition or previous failure." *Webster's Third New Int'l Dictionary* 1686 (unabridged ed 2002). Thus, by instructing the jury that it must determine whether defendant engaged in "persistent involvement," the judge necessarily informed the jury that it was required to determine whether the number or frequency of prior offenses was sufficient to support the requested finding. Or at least, it is not obvious why that is not the case. *See Ailes*, 312 Or at 381 (to constitute plain error, an error must be "obvious" and "not reasonably in dispute").

We conclude that the trial court did not commit plain error in failing to deliver the instruction that defendant asserts the law requires. Because we conclude that there was no plain error, we need not address the state's alternative argument that any error was harmless.

Affirmed.