Argued and submitted January 20, affirmed June 10, 2009

Robert L. CESTARO,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through
the Department of State Police,
*Defendant-Respondent.*

Lane County Circuit Court
160525632; A135803

209 P3d 851

George W. Kelly argued the cause and filed the brief for appellant.

Karla Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals following a jury verdict in defendant's favor in this action seeking damages for employment discrimination. Plaintiff contends that the trial court erred in instructing the jury that it could consider his mental health expert's failure to turn over certain notes to defendant and in excluding evidence that he suffered a stress-related heart attack in 2006. We reject plaintiff's assertion that the trial court improperly excluded evidence relating to a heart attack that he had suffered nearly two years after the end of his employment with defendant. Our review of the record reveals that the trial court properly excluded the evidence pursuant to OEC 403.[1] We therefore write to address only plaintiff's first assignment of error. We affirm.

The relevant facts are undisputed on appeal. From July 2000 until December 2004, plaintiff worked for the State of Oregon as a latent fingerprint examiner. For a period of time after he began working for the state, plaintiff received satisfactory performance reviews. However, in 2003 his work failed a quality assurance test; that failure led to the requirement that a coworker check plaintiff's work each day. Thereafter, plaintiff had difficulty performing his job functions, could not concentrate properly, and made many mistakes in his work.

Plaintiff began to see a therapist, Dr. Reiss, and had approximately 10 sessions with him. After he had seen plaintiff a number of times, Reiss wrote to plaintiff's supervisor to suggest that a change in work atmosphere would help plaintiff's work performance. However, in July 2004, defendant informed plaintiff that he had failed to meet performance standards and, in December 2004, terminated plaintiff's employment. Plaintiff then filed this action that, in relevant part, alleged that defendant had violated ORS 659A.112 when it failed to accommodate his mental condition and terminated his employment.

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence."

Reiss testified as an expert witness at trial and opined that plaintiff suffered from a generalized anxiety disorder. During cross-examination, defense counsel asked Reiss whether he had any notes about what plaintiff had reported relating to his work. The following exchange took place:

"A.   Not with me so I'm going to have to do it from memory.

"Q.   But those notes exist?

"A.   There is a problem with that.

"Q.   And what is the problem?

"A.   The problem is that we had all of our computers, even though it was data—it was data locked so nobody can get them, we had our computers and our backup system stolen, and I informed [plaintiff's] attorney and [plaintiff] of that. And so instead I wrote—my own notes, yeah, through memory.

"\* \* \* \* \*

"Q.   So the answer to the question is, yes, the notes exist, you just don't want to give them up; is that correct?

"\* \* \* \* \*

"A.   No. What exists is a summary of—of what happened.

"\* \* \* \* \*

"Q.   And you have not given that to us; is that correct?

"A.   Uh, that is correct. Although I don't remember a request for that.

"Q.   That was the reason for Mr. Wilson [an attorney for defendant] writing you the letter?

"A.   No. That letter was written previously. And at that point I said: I'm not—all I'm going to give you is a summary which I wrote. However, when I discovered that the notes that—that the notes were gone and—in that particular program, what I then did for myself was write up everything that I could remember. But that was after you requested it."

Thereafter, out of the presence of the jury, the court instructed plaintiff to provide defendant with the materials

Reiss had discussed in the above testimony (the notes). However, defendant later informed the court that it had not received the notes. Plaintiff responded:

> "Oh, I spoke to Dr. [Reiss] about that, the night of his testimony, and he said that they aren't notes. He understood the question to be did he write up anything after the computer [was stolen]. The answer is yes, he did write a summary, basically, of what his testimony would be and his understanding of the situation, to me. And I have that. And if that's what the Court wants, I'll produce it, but that is what he was talking about. He sent me an email to that effect the night after the ruling."

Plaintiff was in possession of a report, dated October 2006, that he asserted was what Reiss had been referring to in his testimony. Defendant, on the other hand, argued to the trial court that Reiss had clearly testified that he had put together some notes and had failed to provide the materials as ordered. The court noted that it was "concerned with the representation that the witness made on the stand that he had made notes, and especially given his initial reluctance to provide those notes, or his initial refusal" to do so. It then determined that it would give a jury instruction regarding Reiss's failure to comply with its order and to provide his notes. Accordingly, the court proposed to instruct the jury that "[t]he Court ordered Dr. [Reiss] to turn over to the defendant certain counseling records. Dr. [Reiss] did not comply with the Court's order. The jury may take this into consideration when evaluating Dr. [Reiss's] testimony."

Plaintiff objected to the giving of any instruction regarding Reiss's failure to provide the materials as ordered. In support of his objection, he stated:

> "Well, the reason I feel strongly that this shouldn't be given, your Honor * * * is it was never identified in time when the burglary of his office occurred. And this report that was—that he's identified to me as the notes he was referring to, is written in the format that a doctor would make notes. It's dated October of 2006. He didn't say, [m]y computers crashed in 2004 and 2005, and I sat down then and made notes. He said, I made notes afterwards.

"And he has in fact, for the record, produced them. I have tendered them to counsel. Counsel has represented to me that he already has those."

The court was then provided with the October 2006 report along with a December 2006 letter Reiss had sent to Wilson, who was referred to in Reiss's testimony. After having considered both documents along with the Reiss's testimony, the court adhered to its ruling and ordered that the instruction be given as a result of the expert witness's failure to comply with the court's prior order. The instruction was, in fact, given to the jury and after it was given, plaintiff did not take exception to the instruction.

On appeal, plaintiff asserts that the trial court erred in giving the instruction for a number of reasons: (1) the instruction constituted factfinding by the trial court that Reiss had failed to comply with the court order, (2) the finding was made without testimony, (3) the court was wrong on the facts, (4) it was wrong to sanction plaintiff for Reiss's violation of a court order, and (5) the sanction was not authorized by the law. As is evident from the above discussion, the only assertion made by plaintiff to the trial court and, therefore, preserved for appeal under ORAP 5.45, is that the court's finding that Reiss had failed to comply with the court order was factually incorrect. However, even that objection was raised only before the instruction was given to the jury.

Pursuant to ORCP 59 H(1),

"[a] party may not obtain review on appeal of an asserted error by a trial court * * * in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception *immediately after the court instructed the jury.*"

(Emphasis added.) Furthermore, ORCP 59 H(2) provides that "[a] party shall state with particularity any point of exception to the trial judge. A party shall make notation of exception either orally on the record or in a writing filed with the court." Moreover, "[a] party who disagrees with a proposed jury instruction must inform the court of the specific grounds for the exception. * * * An exception on one ground does not preserve an error on another ground." *Lane v.*

*Brown*, 328 Or 42, 45 n 1, 970 P2d 206 (1998). Plaintiff's argument to the trial court prior to the giving of the jury instruction that the conclusion underlying the court's decision to give the instruction was factually incorrect was insufficient pursuant to ORCP 59 H to preserve any of the arguments he now makes on appeal in support of his claim of error.

ORCP 59 H is very clear in its requirement that, for this court to review on appeal any asserted error in a jury instruction, the party asserting the error must have taken exception to the instruction, either orally or in writing, immediately *after* the jury was instructed. *See also Peitsch v. Keizer*, 219 Or App 114, 115, 180 P3d 1239 (2008) (applying ORCP 59 H after it was amended in 2004). Plaintiff failed to comply with the explicit requirements of the rule. For that reason, plaintiff failed to properly preserve any claim of error with respect to the jury instruction at issue.

Affirmed.